UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MOHAMMAD-MUAWYEH
MOHAMMAD-YAHYA DWEIDARY,
    Plaintiff,

vs.

CITY OF CINCINNATI, et al.,
    Defendants.

Case No. 1:13-cv-911

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff, a Syrian national seeking to become a citizen of the United States, filed a pro se civil complaint against the City of Cincinnati and the United States Immigration and Naturalization Services (INS)[1] alleging employment discrimination and other violations of federal law. (Doc. 3). Upon *sua sponte* review of the complaint under 28 U.S.C. § 1915(e)(2)(B), plaintiff's claims against the City of Cincinnati and his employment discrimination claim against the federal defendant were dismissed. (Doc. 5). Plaintiff subsequently filed an amended complaint requesting that the Court compel the INS to allow plaintiff to take the oath of citizenship. (Doc. 14). This matter is now before the Court on the federal defendant's motion to dismiss plaintiff's remaining claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Doc. 15) and plaintiff's response in opposition to defendant's motion. (Doc. 18).[2]

---

[1] The INS is the precursor to United States Citizenship and Immigration Services (USCIS).
[2] Plaintiff has filed two additional responses to the motion to dismiss. (Docs. 19 and 20). These filings will not be considered by the Court because they were filed in violation of the Local Rules (*see* S.D. Ohio Civ. R. 7.2(a)(2)) and they do not include any additional material allegations.

I. Motion to Dismiss

    A. Allegations of the complaint (Doc. 3)

Plaintiff makes the following allegations in his complaint[3]: Plaintiff came to the United States on a "student visa" in May of 1971. (Doc. 3 at 3). Plaintiff received a Master's Degree in economics in 1973 from Portland State University and another Master's Degree in economics from the University of Cincinnati after attending school there from 1973 to 1974. (*Id.*). On July 5, 1973, plaintiff became a "permanent resident" of the United States. (*Id.*).

Approximately five years after becoming a permanent resident, "right after the date of" July 5, 1978, plaintiff submitted an application for naturalization together with the required fees and supporting documentation. (*Id.* at 5). Plaintiff waited two years for the INS to act on his application and made over 100 phone calls and paid over 100 visits to the INS office to inquire about his application, but he did not receive a "positive answer." (*Id.*). "Later in years" plaintiff submitted another application for naturalization and was given an interview in relation to his application. (*Id.* at 5, 7). Plaintiff received a pre-typed form stating he had "passed" the naturalization interview on March 19, 2001. (*Id.* at 7). Although plaintiff has made countless "visits and telephone calls" since that time, the INS has not scheduled plaintiff to take the oath of citizenship. (*Id.*). Plaintiff's case has been pending for 40 years, which he asserts is "unfair." *Id.* Plaintiff claims that the INS should be compelled to administer the oath of citizenship or deport plaintiff provided there is a "good reason" to do so. (*Id.*). Plaintiff also maintains that any "good reason" the INS may have had to deport him at one point in time has been obviated by the INS's inaction on his applications. (*Id.* at 9).

---

[3] Plaintiff filed a short amended complaint in which he requests the Court to compel the USCIS to allow him to take the oath of citizenship. (Doc. 14). The amended complaint does not set forth any substantive allegations.

2

**B. Defendant's motion to dismiss (Doc. 15)**

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 15). Defendant contends the Court lacks subject matter jurisdiction over this case because plaintiff failed to exhaust his administrative remedies before seeking judicial review in this Court. Defendant asserts that on June 16, 1980 and August 7, 2002, the INS denied two applications for naturalization filed by plaintiff; however, the complaint includes no allegation that plaintiff sought an administrative hearing on either denial as required under 8 U.S.C. § 1447(a). (*Id.* at 3-4; Exhs. 1-3). Defendant therefore contends that plaintiff's complaint must be dismissed pursuant to 8 U.S.C. §§ 1447(a), 1421(c) and 8 C.F.R. § 336.9(d) for failure to exhaust administrative remedies. (*Id.*). Defendant further contends that the complaint must be dismissed as moot pursuant to Fed. R. Civ. P. 12(b)(1) because plaintiff has received all the relief he seeks, *i.e.*, full adjudication of his applications for naturalization. (*Id.* at 4-6).

Defendant has attached to the motion to dismiss the Declaration of Helaine Tasch, Field Office Director of the Cincinnati Field Office of the USCIS, Department of Homeland Security, and exhibits which Ms. Tasch identifies as copies of the original records contained in plaintiff's file with the INS and USCIS. (Doc. 15, Exhs. 1-3, Tasch Decl., ¶ 5).[4] The first document is a "Petition for Naturalization," which was denied on June 16, 1980. (*Id.*, Exh. 1).

---

[4] The exhibits include administrative determinations by the INS, which are properly subject to judicial notice. *Mincey v. Univ. of Cincinnati*, No. 1:11-CV-300, 2012 WL 1068167, at *1, n. 1 (S.D. Ohio Mar. 29, 2012) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) (citing *Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.")). In addition, the Court may examine letter decisions of governmental agencies without converting the motion into one for summary judgment. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).

The second document is an August 7, 2002 "Decision" on an application for naturalization which was filed by plaintiff on November 7, 2000. (*Id.*, Exh. 2). The Decision includes the following "Explanation" of the denial of the application: Plaintiff indicated on the application his absences from the United States since July 5, 1973, the date he became a permanent resident, and he confirmed those absences when he appeared for a scheduled examination as to his eligibility for naturalization on March 19, 2001. The record did not support plaintiff's account of his absences. The record showed that plaintiff was "granted lawful permanent resident status as the spouse of . . . a United States citizen" on July 5, 1973, and he filed an application to file a petition for naturalization on May 15, 1978. On June 16, 1980, the application was denied for lack of prosecution. It was later established that plaintiff's marriage was a "sham, entered solely for the purpose of circumventing the immigration laws"; on March 6, 1979, deportation proceedings were initiated against plaintiff; and in February 1980, he was requested to appear before an immigration judge but failed to appear. On March 10, 1980 plaintiff filed an application for a permit to reenter the United States and claimed he had just returned to the United States on March 1, 1980, and planned to return to Saudi Arabia on March 11, 1980, to continue his employment with the "Binladen Brothers" because he had been unable to find employment in the United States. He listed two years as his intended length of stay and requested that his reentry permit be mailed to the United States Consulate in Jeddah, Saudi Arabia. Plaintiff filed an application for a new "green card" (Form I-90) on March 11, 1980, claiming his card had been lost or stolen and he listed no absences from the United States of one year or longer. He requested that his new card be mailed to the United States Consulate in Jeddah, Saudi Arabia. Plaintiff departed the United States on or about March 11, 1980. His applications filed on March 10 and 11, 1980, were denied. Plaintiff filed an appeal of the denial

from his application for a reentry permit in April 1981 from Saudi Arabia, but the appeal was denied. Plaintiff applied for and was granted a nonimmigrant B1/B2 visitor's visa at the United States Consulate in Damascus, Syria on May 3, 1999, which would have required that plaintiff prove to a consular officer that he intended to seek entry into the United States consistent with the purposes of the visa classification for a temporary period and that he had a residence in Syria he did not intend to abandon. There is no evidence on file that plaintiff resided in the United States from March 11, 1980 to June 16, 1999. In August 1999, based on information plaintiff provided, an application to replace a green card filed by plaintiff was approved but the approval was erroneous as plaintiff had "long since abandoned [his] status as a permanent resident" when he departed the United States on or about March 11, 1980, and in August 1999 he was in the United States as a "nonimmigrant, not a lawfully admitted permanent resident." Plaintiff reaffirmed that he had abandoned his lawful permanent resident alien status by applying for and being issued a nonimmigrant visa for pleasure on May 3, 1999, and giving false testimony to the United States Consulate on that date when he applied for and was granted the B1/B2 visa. Plaintiff also knowingly and willfully gave false testimony during his scheduled examination on March 19, 2001, when he answered "no" to the question of whether he had ever given false testimony for the purpose of obtaining any immigration benefit.

    The Decision advised plaintiff in conclusion that his 2000 application for naturalization was denied because he failed to meet the necessary requirements listed in 8 C.F.R. § 316.2, specifically:

> You are statutorily ineligible for naturalization as you have not been *lawfully* admitted as a permanent resident of the United States, and on May 3, 1999, and on March 19, 2001, you knowingly and willfully gave false testimony. You have not met your burden of demonstrating that during the statutory period you have been and continue to be a person of good moral character.

(*Id.*) (emphasis in original). Plaintiff was informed in the Decision that in order to have a hearing to review the denial of his application, "**you must file a request for hearing within 30 Days of the date of this notice**" or the decision would become final, and plaintiff was advised of how to request a hearing. (Doc. 15, Exh. 2) (emphasis in original). Ms. Tasch states in her Declaration that there are no pending administrative appeals for either of plaintiff's requests for naturalization. (*Id.*, Exh. 3, ¶ 6).

### C. Plaintiff's response in opposition to the motion to dismiss (Doc. 18)

Plaintiff's response to the motion to dismiss is rambling and difficult to decipher, but he appears to argue that he should have been granted citizenship in 1978 because he met all the requirements for naturalization listed in 8 C.F.R. § 316.2.[5] (Doc. 18 at 1). Further, plaintiff appears to contend that in reviewing the 1978 application for naturalization, the INS should have restricted its investigation to the five-year period between the date he became a permanent resident and the date he filed his application, or to no more than five years and three additional months after he filed his application. (*Id.* at 3, citing 8 C.F.R. § 316.2(5)).[6] Plaintiff states that instead, the INS took two years to complete an investigation before denying his May 1978 application on June 16, 1980. (*Id.* at 3). Plaintiff appears to allege that the denial of his 1978 application was improper because the INS did not learn about the "marriage incident" that was a ground for the denial of his application until after he filed the application, which was outside the five-year period he proposes is appropriate for an INS investigation. (*Id.* at 3-4), Plaintiff alleges that due to the INS's failure to learn about the marriage earlier and the passage of seven years between the date he became a permanent resident and the date his 1978 application was

---

[5] This is an apparent reference to 8 C.F.R. § 316.2(a)(2), which lists as one of the requirements for naturalization that an alien must establish that he has "been lawfully admitted as a permanent resident of the United States[.]"
[6] Title 8 C.F.R. § 316.2(5) imposes a requirement that the alien has resided in a "State or Service district having jurisdiction over the applicant's actual place of residence" for a three-month period immediately preceding the filing of an application, or immediately preceding the examination on the application if certain exceptions are satisfied.

denied, "the incident of marriage should have been vanished" on the legal basis of "Passing Time." (*Id.* at 4). Finally, plaintiff claims that he never received notice of the denial of either of his two applications for naturalization (as well as other administrative actions) and both applications therefore remain valid and pending. (Doc. 15 at 4-5). Plaintiff asserts that the agency should schedule an appointment for him to take the oath of citizenship as soon as possible. (*Id.* at 5).

## II. Standard of review

### A. Rule 12(b)(6) standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts which, if accepted as true, are sufficient to both "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Hensley Mfg., Inc. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must "construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). Although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court may consider documents integral to or attached to the pleadings when ruling on a Rule 12 motion to dismiss without converting the motion to one for

7

summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

**B. Rule 12(b)(1) standard**

There are generally two types of motions challenging subject matter jurisdiction under Rule 12(b)(1). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted). A Rule 12(b)(1) motion can attack a party's claim of jurisdiction on its face or the motion can attack the factual basis for a claim of jurisdiction. *Id*. A facial attack questions the sufficiency of the pleading. *Campbell v. Miller*, 835 F. Supp.2d 458, 463 (S.D. Ohio 2011) (citing *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). When reviewing this type of challenge to the Court's jurisdiction, the Court must take the allegations in the complaint as true and construe the complaint in a light most favorable to the non-moving party. *Id*. (citing *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999)).

When a factual challenge is made under Rule 12(b)(1), the court considers evidence to determine if jurisdiction exists. *Campbell*, 835 F. Supp.2d at 463-64 (citing *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003)). The trial court must weigh the conflicting evidence to make this determination. *Id*. (citing *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). When a factual attack is made, the

8

non-moving party bears the burden of proving that jurisdiction exists. *Id*. (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). In such a case, there is no presumption of truthfulness on behalf of the non-moving party. *Id*. (citing *A.D. Roe Co., Inc.*, 186 F.3d at 722).

Defendant's challenge to the Court's subject matter jurisdiction in this case is properly construed as a factual attack. Defendant has submitted evidence to show that plaintiff's applications were processed and denied prior to plaintiff's filing suit. The Court must therefore consider the evidence to resolve any jurisdictional issues presented by the motion to dismiss.

### III. Naturalization process under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101, *et seq*.

The naturalization process is generally divided into four stages under the INA. *Sze v. I.N.S.*, 153 F.3d 1005, 1007-08 (9th Cir. 1998). First, the applicant must submit completed application materials to USCIS, including information reflecting good moral character. *Id*. at 1007 (citing 8 U.S.C. § 1445(a); 8 C.F.R. §§ 334.2, 316.4, and 316.10). "An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10. USCIS is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application but may take into consideration as a basis for its decision the applicant's conduct at any time prior to that period if the conduct during the statutory period does not reflect that the applicant's character has been reformed and if conduct appears relevant to a determination of the applicant's present moral character. *Id*.

Second, USCIS conducts a background investigation, which will cover a period of at least five years immediately preceding the filing of the application. *Sze*, 153 F.3d at 1007 (citing

8 U.S.C. § 1446(a); 8 C.F.R. § 335.1). There is no prescribed time period within which the investigation must be completed. *Id.* at 1007-08. At the third stage, the applicant is interviewed by a USCIS officer who will, except in limited cases, either grant or deny the naturalization application within 120 days of the examination. *Id.* (citing 8 C.F.R. § 335.3(a)). If an application is denied, the applicant may request a hearing before an immigration officer. *Id.* (citing 8 U.S.C. § 1447(a); 8 C.F.R. §§ 336.1-.2, 336.9). If, however, USCIS fails to render a decision within 120 days after an examination, the applicant may request an individual hearing in the appropriate United States district court. *Id.* (citing 8 U.S.C. § 1447(b), 8 C.F.R. § 310.5). The district court may either determine the matter or remand the case to USCIS with instructions. *Id.* The final stage of processing involves scheduling the applicant for the oath ceremony. *Id.* (citing 8 U.S.C. §§ 1421, 1448; 8 C.F.R. § 310.3, Pt. 337).

The INA specifies only two instances in which intervention by the district court in the naturalization process is authorized. *Baez-Fernandez v. I.N.S.*, 385 F. Supp.2d 292, 294 (S.D. N.Y. 2005). First, the district court may conduct a hearing when an applicant for naturalization has been examined by USCIS and more than 120 days have elapsed without a decision. *Id.* (citing 8 U.S.C. § 1447(b)). Second, the district court may intervene when USCIS has denied a naturalization application and that denial has been affirmed on administrative appeal. *Id.* (citing 8 U.S.C. § 1421(c)). *See also Ogunfuye v. Acosta*, 210 F. App'x 364, 366 (5th Cir. 2006) ("Federal law provides for judicial review of naturalization applications in only two limited circumstances[:] where a naturalization application is denied twice, first in an initial review and later in front of an immigration judge, or where there is significant untimeliness or administrative inaction by the government in reviewing the application.") (citing 8 U.S.C. §§

1421(c), 1447(b)). For the reasons explained below, neither of these situations applies here so as to warrant the district court's intervention in plaintiff's naturalization proceedings.

### IV. Defendant's motion to dismiss should be granted

To the extent plaintiff's complaint is properly construed as a request that defendant act on his 1978 and 2000 applications for naturalization, plaintiff's claims should be dismissed as moot. The district court is authorized under 8 U.S.C. § 1447(b) to conduct a hearing when USCIS has failed to issue a decision within 120 days of an examination by a hearing officer.[7] The purpose of § 1447(b) is to protect applicants against significant administrative untimeliness or government inaction in regard to their applications for naturalization. *Ogunfuye*, 210 F. App'x. at 366. The Sixth Circuit has found that "the plain language of § 1447(b) suggests that the courts' jurisdiction is premised on [USCIS's] failure to make an administrative determination." *Kembi v. I.N.S.*, 8 F. App'x 328, 330 (6th Cir. 2001). The Court in *Kembi* found that because the petitioner's application for naturalization in that case had been effectively denied as a result of his deportation and felony drug conviction, which operated as a statutory bar to becoming a citizen, the petitioner's case was moot. *Id.*

Here, the documentation submitted by defendant shows that plaintiff's applications for naturalization filed in 1978 and 2000 were processed and denied long before plaintiff filed this lawsuit, with the first denial occurring on June 16, 1980, and the second occurring on August 7, 2002. (Doc. 15, Exhs. 1, 2). Therefore, any request by plaintiff under § 1447(b) that USCIS render a decision on his applications is moot and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See Kembi*, 8 F. App'x at 330; s*ee also Omar v. Holder*, 756 F. Supp.2d 887, 891

---

[7] Section 1447(b) states: "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b).

11

(S.D. Ohio 2010) (a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,]" in which case a federal court has no authority to resolve the issues presented) (citing *Ford v. Wilder,* 469 F.3d 500, 504 (6th Cir. 2006)). *See also Elaasar v. Mueller*, 522 F. Supp.2d 932, 934 (N.D. Ohio 2007) (if the plaintiff's claims are moot, the court lacks subject matter jurisdiction to decide the case) (citing *WJW-TV, Inc. v. City of Cleveland,* 878 F.2d 906, 909 (6th Cir. 1989)).[8]

Further, insofar as plaintiff requests review of the decisions denying his applications for naturalization under § 1421(c), plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust his administrative remedies. Title 8 U.S.C. § 1421(c) provides that a "person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court. . . ." Section 1447(a) provides that "[i]f, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer." 8 U.S.C. § 1447(a). Title 8 C.F.R. § 336.9 further provides, in pertinent part:

> (d) Exhaustion of remedies. A USCIS determination denying an application for naturalization under section 335(a) of the Act shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the Act. . . .

8 C.F.R. § 336.9(d). Section 336.2(a) of the regulations provides that the applicant may request a hearing on the denial of his application for naturalization by filing a request with USCIS within 30 days after the applicant receives notice of the denial. 8 C.F.R. § 336.2(a). Thus, under the statutory scheme, when USCIS denies an application for naturalization, the applicant must first

---

[8] The plaintiff's claims were not moot in *Elasssar* because the plaintiff filed his complaint seeking a juidicial determination on his naturalization application more than 120 days after his examination but before USCIS made a determination on the application. 522 F. Supp.2d at 935.

12

pursue an administrative appeal of the decision by requesting a hearing before an immigration officer. *Omar*, 756 F. Supp.2d at 894. If the immigration officer upholds the denial, the applicant may then seek a *de novo* review of that determination in federal district court. *Id.*

The administrative hearing requirement in § 1421(c) is best characterized as a "claim-processing rule" and more specifically as "an administrative-exhaustion requirement, because the statutory text indicates that an applicant for naturalization who wishes to seek judicial review of the denial of the application may do so only after an administrative hearing before USCIS." *Shweika v. Department of Homeland Sec.*, 723 F.3d 710, 716 (6th Cir. 2013). Consistent with Supreme Court precedent finding claim-processing rules generally to be nonjurisdictional, the Sixth Circuit in *Shweika* determined that § 1421(c)'s administrative-hearing requirement was nonjurisdictional. *Id.* at 719. The Sixth Circuit accordingly vacated the district court's order which had dismissed the complaint for lack of subject matter jurisdiction after reaching the opposite conclusion. *Id.* at 719-20.

The Sixth Circuit left open in *Shweika* the question of what non-jurisdictional consequences attach when an applicant fails to exhaust his administrative remedies under § 1421(c).[9] *Id.* The Court nonetheless indicated that the exhaustion requirement is mandatory by stressing that the plaintiff was not free to disregard the administrative hearing requirement. *Id.* The Sixth Circuit's reliance on its decision in *Abraitis v. U.S.*, 709 F.3d 641, 644-45 (6th Cir. 2013) as "particularly instructive" further suggests that the *Shweika* court deemed § 1421(c)'s exhaustion requirement to be mandatory. *Id.* at 717. The *Shweika* court noted that *Abraitis* involved a statute, 26 U.S.C. § 7429, with a structure similar to that of § 1421(c), including an

---

[9] The administrative proceedings in *Shweika* were somewhat unusual, and there was some question as to whether the plaintiff had satisfied § 1421(c)'s administrative-hearing requirement. *Id.* at 720. Thus, the Sixth Circuit instructed the district court to reconsider on remand (1) "whether § 1421(c)'s administrative-hearing requirement implies a completion requirement"; (2) whether plaintiff fulfilled the requirement; and (3) if he failed to do so, what nonjurisdictional consequences attach to failure to satisfy the administrative-hearing requirement. *Id.*

13

exhaustion requirement and filing deadlines imposed as conditions for filing a civil action. *Id.* That exhaustion requirement was held to be mandatory in *Abraitis* "inasmuch as the availability of judicial review hinges on either exhaustion or a timely request for administrative review." *Abraitis,* 709 F.3d at 645 (citing 26 U.S.C. § 7429(b)(1)(A)-(B)). Thus, although the administrative hearing requirement of § 1421(c) is not jurisdictional, the Sixth Circuit has indicated that it is mandatory, so that plaintiff was required to exhaust the administrative hearing requirement before seeking review in federal court. *See Kentucky v. U.S. ex rel. Hagel,* 759 F.3d 588, 599 (6th Cir. 2014) ("In most cases, a failure to exhaust administrative remedies is fatal to a suit in federal court.") (citing *Hoogerheide v. IRS,* 637 F.3d 634 (6th Cir. 2011) (collecting cases)).

Here, there is no indication in the record that plaintiff requested an administrative hearing as to either of the two applications for naturalization which he filed in 1978 and 1980. The record shows that the INS denied the first application in 1980 and the second application in 2002. (Doc. 15, Exhs. 1, 2). Plaintiff does not allege that he ever sought administrative review of either decision, and Ms. Tasch states in her Declaration that there are no pending administrative appeals in plaintiff's administrative file. (Doc. 15, Exh. 3, ¶ 6). Plaintiff alleges in his response to the motion to dismiss that he did not receive notice of the decisions denying his applications. (Doc. 18 at 4-5). However, plaintiff has made only a barebones allegation that he did not receive notice and has not introduced an affidavit or other evidence to support his allegation. Further, plaintiff has not offered any justification for waiting over 35 years and 11 years, respectively, after filing his applications to seek relief in federal court. Plaintiff has failed to exhaust his administrative remedies as required under § 1421(c) and any claim for review brought by plaintiff under this statutory provision should be dismissed pursuant to Fed. R. Civ.

P. 12(b)(6). *See Hoogerheide*, 637 F.3d at 639 (dismissal on failure-to-exhaust grounds was warranted where plaintiff failed to comply with mandatory exhaustion requirement).

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion to dismiss the complaint for lack of subject matter pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 15) be **GRANTED** as to any claims brought under 8 U.S.C. § 1447(b).

2. Defendant's motion to dismiss the complaint for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 15) be **GRANTED** on failure to exhaust grounds as to any claims brought under 8 U.S.C. § 1421(c).

3. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

Date: 10/7/14

Karen L. Litkovitz
United States Magistrate Judge

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MOHAMMAD-MUAWYEH
MOHAMMAD-YAHYA DWEIDARY,
    Plaintiff,

vs.

CITY OF CINCINNATI, et al.,
    Defendants.

Case No. 1:13-cv-911

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mohammad- Msawyeh
Mohammad-Yahya Dweiday
3336 Gerold Dr.
Apt. 12
Cinti, OH 45238

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☒ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)
7011 3500 0001 5345 6113

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540